UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TONYA ELISE SMITH-DUKE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 2:19-cv-00195-JHE |
| NIDEK MEDICAL PRODUCT, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Tonya Elise Smith-Duke ("Duke" or "Plaintiff"), proceeding *pro se*, brings this employment discrimination action against Defendant Nidek Medical Product ("Nidek"), contending Nidek paid her less because of her race and terminated her in retaliation for making an internal complaint about unequal pay, both in violation of Title VII of the Civil Rights Act of 1964.[2] (Doc. 1). Nidek has moved for summary judgment on both claims. (Doc. 35). Duke has filed a response in opposition, (doc. 45), and Nidek has filed a reply, (doc. 46). The motion is fully briefed and ripe for review. For the reasons stated more fully below, the motion is **GRANTED**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

[2] It is not entirely clear from Duke's complaint whether she alleges a retaliatory termination claim, but the EEOC charge attached to the complaint appears to include it, (*see* doc. 1 at 10), Duke appeared to confirm at her deposition that it is one of her claims, (*see* Deposition of Tonya Duke, doc. 36-2 ("Duke Depo.") at 22 (77:2-5)), and Nidek opposes Duke's claim to the extent she asserts it. For the purposes of this memorandum opinion, the undersigned assumes Duke's complaint contains this claim.

**I. Standard of Review**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the nonmovant's favor when sufficient competent evidence supports the nonmovant's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th

Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[3]

### A. Duke's Work and Pay at Nidek

Nidek, a manufacturer of oxygen containers, has a production facility in Birmingham,

---

[3] Because Duke is a *pro se* litigant, the undersigned liberally construes her pleadings. *Tannenbaum v. U.S.,* 148 F.3d 1262, 1263 (11th Cir. 1998). However, she is still required to adhere to the requirements of the Federal Rules of Civil Procedure. *McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Albra v. Advan, Inc.,* 490 F.3d 826, 829 (11th Cir.2007) ("And although we are to give liberal construction to the pleadings of *pro se* litigants, we nevertheless have required them to conform to procedural rules." (citation and internal quotation omitted). Duke does not cite to any evidence in support of the factual claims in her response brief. The rules governing summary judgment procedure require a party asserting that a fact is disputed is required to support that claim by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). Duke has attached some materials to her response, and although they are not presented in a technically correct form, *see* FED. R. CIV. P. 56(c)(4), the undersigned has reviewed them. However, "[s]tatements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists." *Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986). This includes Duke's references to statements made by defense counsel at the September 4, 2020 hearing on Duke's Rule 52(d) motions for discovery, because "statements and arguments of counsel are not evidence." *United States v. Smith,* 918 F.2d 1551, 1562 (11th Cir. 1990)). To the extent Duke simply asserts claims with no evidentiary support in the record, the undersigned may not consider these to be summary judgment facts.

Additionally, the undersigned notes that Duke was on notice that she was required to present her contentions by affidavit. After the hearing on Duke's motions for discovery, the undersigned entered an order denying the motions because Duke had not demonstrated her diligence and because Duke had not shown the materiality of the discovery she sought: evidence she contended would show she performed the same tasks as other employees who were paid more. (Doc. 44). The undersigned observed that, to the extent Duke contends "other employees did the same tasks as she did" (which is the bulk of the allegations in her brief, (*see* doc. 45 at 1-6)) "she

3

Alabama. (Declaration of Neal Pate ("Pate"), doc. 36-1 ("Pate Decl.") at ¶ 2).[4] Duke, who is a black woman, first started working at Nidek as a temporary worker in June 2010. (Duke Depo. at 14 (46:14-47:1)). Nidek eventually hired Duke as an hourly Production Associate in January 2011 at a starting rate of $8.00 per hour. (*Id.* at ¶ 3). She remained a Nidek employee and a Production Associate until her termination on September 27, 2017. (*Id.*).

Nidek produces oxygen containers through an assembly line, with different parts of the product assembled and tested along a series of stations. (*Id.* at ¶ 4). Production Associates at Nidek perform different tasks along the line, some of which require skill and independent judgment. (*Id.*).

Duke performed a variety of functions as a Nidek Production Associate. For the most part, Duke was responsible for "boxing" products (i.e., packaging them for delivery). (Duke Depo. at 17 (58:2-59:6); Pate Decl. at ¶ 5). Boxing is a repetitive, manual process of folding a box together, placing an oxygen concentrator and instruction manual in the box, and closing the box. (Pate Decl. at ¶ 5). In 2017, Duke began working primarily in the "valve room," assembling a component of the oxygen concentrator. (*Id.* at ¶ 6). This is also a repetitive task that requires no discretion or independent judgment. (*Id.*).

In 2015, Nidek began using a classification structure for Production Associates, aiming to

---

may offer this evidence by affidavit in opposition to summary judgment." (*Id.* at 5). However, she did not do so.

[4] Pate is Nidek's Operations Manager. (Pate Decl. at ¶ 2). He states in his declaration that he has personal knowledge of the job duties, responsibilities, and pay rates of Nidek's Production Associates. (*Id.*). Pate was also personally involved in setting Nidek's Production Associate pay rates. (*Id.* at ¶ 8).

distinguish between the required skill and responsibility of particular jobs. (Pate Decl. at ¶ 7). Production Associates were categorized as Level I, II, or III, with higher classification levels receiving higher pay. (*Id.*). At the time, Duke was primarily working in boxing, and was assigned Level II based on the skill level required for boxing and her experience. (Pate Decl. at ¶ 9). Duke received the following pay raises while at this level:

| April 20, 2015 | $10.50 to $11.00 |
| November 2, 2015 | $11.00 to $11.25 |
| December 26, 2016 | $11.25 to $11.75 |

(*Id.*; doc. 36-1 at 12). Duke continued to be classified at Level II when she moved to the valve room, and she was paid $11.75 until her termination on September 27, 2017. (Pate Decl. at ¶ 9).

### B. Duke's Coworkers

One of Duke's coworkers was Kristen Jackson ("Jackson," white female), whom Duke had trained on some job responsibilities. (Duke Depo. at 22 (78:15-18)). On April 20, 2015, Jackson was assigned to Level III and given a raise to $10.50 per hour. (*Id.* at ¶ 10). Jackson received the following pay raises at this level:

| November 21, 2015 | $10.50 to $11.50 |
| December 26, 2016 | $11.50 to $11.85 |

(*Id.*; doc. 36-1 at 14). Jackson's higher pay rate reflected the fact her duties required a higher level of skill. (Pate Decl. at ¶ 10). Specifically, Jackson worked on the "burn in line," a quality control function that involves stress-testing the product by "running it for an extended period of time in order . . . to ensure it is operating correctly." (*Id.*). Jackson was responsible for identifying problems, determining the remedy, and making corrections if possible. (*Id.*). If Jackson determined the product was operating correctly, she would send the product down to boxing. (*Id.*).

Duke's coworker Vincent Martin, ("Martin," white male), was assigned to Level II on April 20, 2015, and given a raise to $11.00 per hour. (*Id.* at ¶ 11). Martin received the following raises:

| October 30, 2015 | $11.00 to $11.25 |
| December 26, 2016 | $11.25 to $11.85 |
| July 4, 2017 | $11.85 to $12.35 |

(*Id.*). Martin's December 2016 raise coincided with a reclassification to Level III because of the higher level of skill required by his job. (*Id.*). Martin primarily worked in the pretest phase of production, a quality control function that involves testing wiring, sound, and other components to determine whether the product needed to be repaired, should be placed on the "non-conforming line," or could progress to the burn in line. (*Id.*). Martin would often make repairs, if necessary. (*Id.*).

Another of Duke's coworkers was Joseph Krawczyk, II, ("Krawczyk," white male) who began working for Nidek in 2017. (*Id.* at ¶ 12; Duke Depo. at 22 (79:1-4)). Krawczyk made $10.00 per hour. (*Id.*; doc. 36-1 at 16).[5]

Duke's EEOC charge reflects she complained to Pate in August 2016 that she was paid less than Jackson and Martin. (Doc. 1 at 10). Duke testified she had confronted Pate about her pay, and Pate had told her that if she discussed anyone else's pay, she would be terminated. (Duke Depo. at 19 (67:8-11)). Pate did not recall this conversation and denied that Duke had alleged she was paid less due to her race or sex. (Pate Decl. at ¶ 13).

---

[5] In her deposition, Duke contended Krawczyk's pay record had been altered because it looked different than other pay records. (Duke Depo. at 22-23 (79:17-83:4)). There is no evidence to support the inference Nidek altered Krawczyk's pay records.

**C. Duke's Termination**

At around 6:00 a.m. on September 27, 2017, Duke was involved in a fight in the Nidek parking lot. (Pate Decl. at ¶ 14; Duke Depo. at 20 (69:17-70:3)). The parties' accounts diverge somewhat, but both agree the fight happened and Duke was involved. Duke testified another employee, Shandon Collins ("Collins"), had attacked her with a knife near Collins' vehicle, and Duke had simply defended herself. (Duke Depo. at 18-19 (64:18-66:10)). Others were on the scene, and management found out when Collins' boyfriend went inside the building to tell them. (*Id.* at 19-20 (66:11-16, 70:1-71:1)). Both Collins and Duke clocked in and went to their work stations. (*Id.* at 20 (71:12-72:4)). Collins and Duke were separately called into a conference room to speak with Pate and Randy Scott (Nidek's Quality Assurance Manager, (*see* doc. 36-1 at 10), but Duke was not told she was terminated and was instead sent back to her work station. (Duke Depo. at 20 (72:5-20)). Then, right before the 8:30 break, both employees were called back. (*Id.* at 20 (75:21-23)). Duke was escorted to her car and told she was being terminated for violating Nidek's workplace violence policy; Duke did not remember anyone saying she was being terminated because of her pay. (*Id.* at 20-21 (75:23-74:4)). Collins was also terminated the same day. (*Id.* at 21 (74:5-11)).

Pate stated in his declaration that Nidek management had received a report of a fight between two employees in the parking lot at around 6:00 a.m. (Pate Decl. at ¶ 14). When Pate arrived on the scene, Duke and another employee, Shandon Collins ("Collins"), had been physically separated, but were still engaged in a verbal dispute. (*Id.*). Witnesses had reported that the two had fought, and each admitted to fighting when questioned by management. (*Id.*). Pate and Joe Krawczyk (Nidek's president, (*see* doc. 36-1 at 10), and not the Production Associate

referenced above) reviewed video from the incident showing that Duke was waiting for Collins to get out of her vehicle prior to the beginning of the fight. (*Id.*).

Nidek has a Workplace Violence Prevention Policy specifically prohibiting acts including fighting, and providing in part that "[a]nyone determined to be responsible for threats of violence, violent acts or other conduct that is in violation of these guidelines will be subject to prompt disciplinary action up to and including termination of employment." (Doc. 36-1 at 18-19). Nidek concluded both employees had committed a serious violation of the policy, and Nidek issued a written termination notice to Duke the same day. (Pate Decl. at ¶ 15; doc. 36-1 at 21). Duke received the notice, but did not sign it because she did not agree with it. (Duke Depo. at 20 (69:4-16)). Pate denied this termination decision was motivated by race or in retaliation for complaints about pay. (Pate Decl. at ¶ 16).

Pate stated in his declaration that since at least 2008, there had been no other incident where two Nidek employees had fought and were not terminated. (*Id.*). Duke testified Pate had previously gotten into a confrontation with another associate and physically touched (but not fought) him; Pate was not fired, but the associate was. (Duke Depo. at 19 (67:12-18), 21 (74:12-21)).

### III. Analysis

Nidek has moved for summary judgment on both of Duke's claims.

#### A. Disparate Treatment (Race)

A Title VII plaintiff asserting a disparate treatment claim must show the defendant acted with discriminatory intent. *Denny v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001). "In order to show discriminatory intent, a plaintiff must demonstrate that the decisionmaker selected

or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group." *Joe's Stone Crab, Inc.*, 220 F.3d at 1273 (internal quotation marks, alterations, and citation omitted).

Duke has no direct evidence of disparate treatment, so she must show it through circumstantial evidence. When a plaintiff bases her disparate treatment claims on circumstantial evidence, the court generally applies the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). Under the *McDonall Douglas* framework, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (citation omitted). If the plaintiff makes this showing by a preponderance of the evidence, the burden shifts to the defendant employer to show a legitimate, nondiscriminatory reason for its actions. *Id.* at 1221 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the defendant makes this showing, the burden shifts back to the plaintiff to "demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 256).

Here, Duke's *prima facie* case fails because her comparator employees are not "similarly situated in all material respects," *Lewis*, 918 F.3d at 1218. Duke points to two comparators in her

9

response: Jackson and Martin.[6] Duke made more than Martin until Martin was reclassified to Level III. Jackson was also a Level III Production Associate. As a Level II Production Associate, Duke was not similarly situated to either Martin or Jackson. While Duke is not required to show her comparators had "precisely the same title," she is required to show the jobs they performed were close enough that Duke "cannot reasonably be distinguished" from them. *Lewis*, 918 F.3d at 1227 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015)). *See also Lindsey v. Board of School Commissioners of Mobile County*, 491 F. App'x 8, 10 (11th Cir. 2012) ("a black plaintiff makes a prima facie showing of wage discrimination by showing that [s]he received lower wages than a white coworker despite performing substantially the same work."). The undisputed evidence is that Level III Production Associates such as Martin and Jackson perform tasks that require more judgment and skill than Level II employees. The only evidence of record is that Duke worked at two repetitive stations—boxing and the valve room—requiring little judgment or skill. Conversely, Jackson and Martin both tested products, determined whether they were functional, and exercised judgment as to what to do with nonfunctional products.

In her response, Duke claims all three employees were "floaters" and that defense counsel admitted this at the last hearing. (Doc. 45 at 2). As stated above, this is not evidence. Furthermore, whether the employees were technically classified as "floaters" or not, the undisputed evidence is that Duke performed different tasks than Jackson and Martin, as discussed above. Duke points to several tasks she performed during her time at Nidek that required skill and independent judgment,

---

[6] Duke does not argue Krawczyk is an appropriate comparator in her response. (*See* doc. 45). In any case, it is undisputed that Krawczyk made less than Duke during the time they worked together.

including work on the burn in line. (*Id.* at 4, 6). Even if Duke had provided admissible evidence for this assertion, there is no evidence she performed any of those jobs during the time period when she was paid less than Martin and Jackson (regardless of whether she was capable of doing the jobs), and specifically no evidence Duke performed any of them after Nidek implemented its classification system. Duke also argues Jackson and Martin got raises more quickly than she did, (*id.* at 5), but that is not material to Duke's claim that she was paid less than them.

Even if Duke could make out a *prima facie* case, she would not be able—and does not attempt—to show Nidek's legitimate nondiscriminatory reason for the unequal pay is pretextual. "The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Crawford*, 529 F.3d at 976. A pretextual reason is not only one that is false but one that conceals an actual, discriminatory reason. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). As stated above, Nidek contends Martin and Jackson were classified differently and made more than Duke because they had more skill- and judgment-intensive responsibilities. Although Duke contends at some point she had similar duties to Martin and Jackson, Duke does not point to any evidence, and the undersigned has found none in the summary judgment record, that would show Nidek's proffered reason is false or discriminatory. Accordingly, Duke's disparate treatment claim is due to be dismissed.

### B. Retaliation

Title VII bars an employer from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

[Title VII]." To establish a *McDonnell Douglas prima facie* case of Title VII or § 1981 retaliation, a plaintiff must show that "(1) [s]he engaged in statutorily protected expression, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there was some causal relation between the two events." *Worley v. City of Lilburn*, 408 F. App'x 248, 250 (11th Cir. 2011) (citing *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001)). A retaliation plaintiff must show that the "protected activity was a but-for cause of the alleged adverse action by the employer." *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013).

The only record evidence of Duke's protected activity prior to her termination is her August 2016 complaint to Pate about unequal pay. Although Nidek disputes this ever happened, for summary judgment purposes the undersigned accepts as true that it did. In any event, Nidek contends Duke cannot make out a *prima facie* case of retaliation because she cannot show a causal connection between her alleged protected activity and her termination. (Doc. 35 at 15-16). It also argues Duke was undisputedly terminated for fighting. (*Id.* at 16-17). Duke does not specifically respond to Nidek's arguments, but states Martin was previously terminated for violating the Workplace Violence Prevention policy and was allowed to return to work. (Doc. 45 at 3). There is no evidence in the record to support this allegation, and it does not show any of the elements required for Duke to make out a *prima facie* case of retaliation. Since Duke has failed to defend this claim, she has abandoned it. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)

(dismissing undefended claims on summary judgment); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

Furthermore, Nidek's arguments are well-taken. Duke has not shown a causal connection between her complaint and her termination because the protected conduct at issue occurred in August 2016, over a year before Duke's termination in September 2017. There is no other evidence to connect the complaint and Duke's termination. "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). In *Thomas*, the court found three months to be too long to show a causal connection, without more. *Id.* Substantially more than three months passed here, so Duke's retaliation claim is legally insufficient. In any case, although the undersigned accepts as true Duke's version of the fight (i.e., that Collins attacked Duke and Duke fought back in self-defense), Duke admits that she was a participant in it. As such, Duke also cannot show the reason for her termination was pretextual. Nidek is entitled to summary judgment on this claim as well.

## IV. Conclusion

For the reasons stated above, Nidek's motion for summary judgment, (doc. 35), is **GRANTED**. A separate order will be entered.

DONE this 26th day of March, 2021.

                                                **JOHN H. ENGLAND, III**
                                                UNITED STATES MAGISTRATE JUDGE